United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALAN H. STARK,

        Plaintiff,

  v.

MICHAEL J. ASTRUE,
Social Security Commissioner

        Defendant.
_____/

No. C 07-6465 MHP

**MEMORANDUM & ORDER**

**Re: Cross-Motions for Summary Judgment**

    Having exhausted his administrative remedies, claimant Alan H. Stark seeks judicial review, pursuant to 42 U.S.C. section 405(g), of a final decision of Michael J. Astrue, the Commissioner of Social Security ("the Commissioner"). Stark alleges that he was improperly denied Social Security Disability Benefits and Supplemental Security Income. Now before the court are cross-motions for summary judgment and Stark's motion in the alternative for remand. Having considered the arguments presented and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

    On March 18, 2004, Stark filed applications for Social Security Disability Benefits ("SSDI") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. See Administrative Record ("AR") at 4, 17, 81-83. In both applications, Stark alleged an inability to perform his job as an employment recruiter due to his HIV-positive status and mental impairments,

including depression, anxiety and difficulty getting along with co-workers. AR at 93-94. Stark was 47 years old at the time he filed his applications. His SSDI and SSI applications were denied, as were his applications for reconsideration. Stark sought review of his case by an administrative law judge ("ALJ"). A hearing was held on May 17, 2006, at which the ALJ took testimony from Stark. AR at 17, 330, 332-76. A vocation expert, Mr. Malmuth, was also present at the hearing but the ALJ did not call on the expert to testify. AR at 332-376.

According to the record, Stark alleges he became disabled in February 2003, from depression and symptoms of HIV. His partner had previously been diagnosed with AIDS, and was in a vegetative state before dying. Stark sought medical attention for his symptoms of frustration, despair and suicidal ideation. He was prescribed various medications over the next several months. In June 2003, Stark requested he be taken off Paxil, because he had gained some 28 pounds within a six-week period. By September of that year, Stark indicated his depression had worsened and he requested another type of anti-depressive medication. In November, he was hypertensive and anxious. By February 2004, Stark indicated he had last taken his blood pressure medications three weeks prior, and in May 2004, said he was only "occasionally" taking his anti-hypertensive medications. This type of behavior continued through January 2005, when he was taken to the hospital and placed on a 5150 involuntary hold after he threatened to kill some of his friends who were visiting him. AR at 282-284. He also indicated at the hearing that he had been treated for a leg infection, possibly a symptom of the HIV, and shingles.

On December 26, 2006, the ALJ issued an opinion finding that Stark was "not disabled." AR at 17-27. In reaching this decision, the ALJ applied the five-step evaluation as required by 20 C.F.R. sections 404.1520 and 416.920. The evaluation process uses the following sequential analysis:

(1) If the claimant is performing substantial gainful work, he is not disabled.

(2) If the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found to be disabled.

(3) If the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least 12 months, and his impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1,

2

<div style="padding-left: 4em;">

Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment (or impairments) does not prevent him from doing his past relevant work, he is not disabled.

(5) Even if the claimant's impairment or impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

</div>

The ALJ found that Stark had not engaged in substantial gainful activity and that his HIV-positive status, hypertension, bipolar I disorder, personality disorder not otherwise specified and polysubstance dependence/abuse constitute "severe" impairments, getting him past the first two steps. After looking at Stark's impairments both singly and in combination for the third step, however, the ALJ found that Stark's impairments did not meet or equal in medical severity the criteria of any listed impairment found in 20 C.F.R., Pt. 404, subpt. P, app. 1 (the "Listings"). AR at 18-19.

In analyzing Stark's eligibility to meet steps four and five, the ALJ had to first make a determination as to whether Stark retained the Residual Functional Capacity ("RFC") to perform the requirements of his past relevant work or other work "existing in significant numbers in the national economy." AR at 19. In assessing RFC, the standard is the claimant's ability to perform sustained work activities, at the highest level possible, in an ordinary work setting and on a regular and continuing basis, which is defined as eight hours a day, five days a week, or some equivalent schedule.

To reach such a determination, the ALJ noted he considered all symptoms, including pain, medical evidence, and Stark's credibility. The ALJ found that Stark had the RFC on a physical exertional basis to perform a full range of "medium" work activity, but also the ALJ also found limitations in non-exertional functioning, the latter of which is an impairment that does not directly affect strength. AR at 23. As such, at the fourth sequential evaluation step, the ALJ found that Stark could not perform any of his past skilled and semi-skilled work. But at the fifth step, he found that "the claimant's limitations to simple unskilled work involving only limited contact with the public and co-workers do not preclude him from performing substantially all of the requirements of

unskilled medium work, and considering the claimant's age, education, and work experience, a finding of 'not disabled' is supported by application of Medical-Vocational Grid rule 203.29 prior to the attainment of age 50 . . . and Grid rule 203.22 as of the attainment of age 50 and continuing thereafter." AR at 26.  The ALJ ultimately found that Stark was not disabled as defined by the Social Security Act.

Stark appealed from the ALJ's decision to the Appeals Council ("Council") on February 27, 2007.  AR at 10-11.  The ALJ's decision became the final decision of the Commissioner when the Council denied review on October 19, 2007.  AR at 6-8.  On June 27, 2007, Stark submitted a letter brief from one of his treating physicians, Dr. Heather Clague, and additional medical records to the Council.  AR at 287-239.  In its final decision, the Council noted that the additional material was deemed entered in the record but no indication was made to show that it had been considered or that it provided no reason to disturb the ALJ's decision.  AR at 6-8.

Stark subsequently filed this request for judicial review, contending that the ALJ erred in: (1) failing to properly weigh the opinions of treating and examining physicians; (2) discrediting Stark's testimony and subjective claims of disability; (3) failing to specifically address Stark's social worker's report; (4) failing to consider the effects of Stark's HIV status; and (5) relying on the Medical-Vocational Guidelines ("grids") to determine that Stark was not disabled rather than on testimony from a vocational expert.

LEGAL STANDARD

This court may disturb the Commissioner's final decision "only if it is not supported by substantial evidence or if it is based on legal error." Edlund v. Massanari, 453 F.3d 1152, 1156 (9th Cir. 2001). "Substantial evidence, considering the entire record, is relevant evidence which a reasonable person might accept as adequate to support a conclusion." Matthews v. Shalala, 10 F.3d 678, 679 (9th Cir. 1993). It is more than a scintilla, but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971). The court's review "must consider the record as a whole," both that which supports as well as that which detracts from the Commissioner's decision. Desrosiers v.

4

1  Secretary of Health & Human Serv., 846 F.2d 573, 576 (9th Cir. 1988).  If, however, "the evidence
2  is susceptible to more than one rational interpretation," the Commissioner's decision must be
3  affirmed.  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir.1997).  Even if substantial evidence
4  supports the Commissioner's findings, the decision must be set aside if improper legal standards
5  were applied in reaching that decision.  See Benitex v. Califano, 573 F.2d 653, 655 (9th Cir. 1978).

DISCUSSION

I.   Claimant's Residual Functional Capacity

The ALJ found that Stark was not performing substantial work, that he was not doing so because of severe impairments, and that because of these impairments he could not perform any past relevant work.  The ALJ nevertheless found that Stark was capable of performing a full range of medium work, based on the ALJ's assessment of Stark's RFC.  The thrust of Stark's contentions address the manner in which the ALJ evaluated and determined his RFC.

If the ALJ finds that the claimant cannot return to his past relevant work, as he did in this case, the burden shifts to the ALJ to show that the claimant "could perform 'other work' considering his [RFC], age, education and work experience."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993). The ALJ found that Stark, if properly maintained on his prescribed medical regimen, had the RFC to physically perform a full range of medium work.  Mentally, the ALJ found, Stark is precluded from performing more than simple repetitive tasks, with limited contact with the public and co-workers. The ALJ determined that, based on his weighing of the various factors presented to him, Stark was not capable of performing his past relevant work, but based on those same factors he is capable of physically performing a full range of medium work.

Stark argues that the ALJ's finding that he retained the RFC to perform a full range of medium work was not supported by substantial evidence, and was the result of errors of law, because the ALJ: (1) improperly rejected the opinions of the treating and examining physicians; (2) did not provide adequate rationale for rejecting Stark's subjective allegations of disabling symptoms; (3) failed to consider evidence from Stark's social worker; and (4) disregarded Stark's HIV status.

5

To determine a claimant's RFC, the ALJ's assessment must take into account all of the claimant's medically determinable impairments and be based on all relevant evidence in the case record, including medical records and opinions, the individual's statements regarding his symptoms and resulting limitations, and the statements of family, friends and others. 20 C.F.R. §§ 404.1545(a)(3) & 416.945(a)(3). Stark argues that the ALJ committed errors of law in assessing the evidence in this case, and that the ALJ's RFC assessment was not supported by substantial evidence.

### A. Reports and Opinions of Treating and Examining Physicians

Stark's first argues that the RFC assessment was not supported by substantial evidence because the ALJ did not properly assess his mental limitations based on the various physicians' opinions, and the ALJ improperly rejected the opinions of the treating and examining physicians. An ALJ may reject the opinion of a treating physician, whether it is controverted or not. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). To be given controlling weight, a treating physician's opinion must be "well-supported by medically acceptable clinical and diagnostic techniques" and "not inconsistent with the other substantial evidence" in the claimant's case. 20 C.F.R. § 416.927(d)(2). Where a treating physician's opinion is contradicted by the opinion of an examining physician, the ALJ may reject the treating physician's opinion by making findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence of record. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ can meet this burden by setting forth a detailed and thorough summary of the facts and conflicting clinical evidence. Id. Further, an ALJ may accept a non-treating medical opinion over a treating opinion when the non-treating physician relies on independent clinical findings that differ from the findings of the treating physician. Id. Where the opinion of the claimant's treating physician is contradicted, and the opinion of the non-treating physician is based on independent clinical findings that differ from those of the treating physician, the non-treating physician's opinion can itself be considered substantial evidence.

Stark contends that the ALJ improperly disregarded the "Evaluation Form for Mental Disorders" dated January 3, 2007 from treating psychiatrist Dr. Heather Clague, which was

6

1 submitted to the Appeals Council on June 27, 2007.  The Appeals Council denied Stark's request for
2 review some four months later, on October 19, 2007.  Stark argues that while the Appeals Council
3 stated that "this information does not provide a basis for changing the Administrative Law Judge's
4 decision," AR at 6-7, the Council still accepted it and made it a part of the record.  AR at 9.

5       The Commissioner contends that Dr. Clague's medical report does not meet the requirements
6 of 42 U.S.C. § 405(g), which states that in order to remand for new evidence there must be a
7 showing that the evidence is new and material, and that the claimant had good cause for failing to
8 produce it earlier.  Here, while there was no good cause shown, the record indicates that the Council
9 accepted Stark's rationale that the medical records were not available at the time of the hearing and
10 proceeded to incorporate the evidence into the record.  AR at 9.  Despite the Council's finding that
11 the evidence would not have changed its decision, the Council should have still taken the medical
12 report into consideration when assessing Stark's RFC.  By failing to consider the medical reports,
13 which documented in detail Stark's impaired social functioning, this court finds the ALJ committed
14 a legal error because the report constituted relevant evidence in the record.

15       Next, Stark notes that the record considered by the ALJ also included reports from Dr. Herb,
16 his primary treating physician, and Dr. Schwartz, his psychologist.  Dr. Herb's report noted that
17 Stark's "HIV disease has advanced significantly" and that the bacterial infection in his leg and the
18 recurring shingles "may be due to HIV-related immune deficiency."  As noted above, an ALJ has the
19 discretion to reject a treating physician's opinion, so long as he sets forth specific and legitimate
20 reasons for doing so.  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  Stark contends the ALJ
21 failed to provide any reason whatsoever for rejecting Dr. Herb's opinion, and that this constituted
22 legal error.  The court, however, finds that the ALJ did give sufficient reason for discrediting the
23 opinion even though he did not frame it in those exact words—namely, that Dr. Herb's opinion was
24 not supported by any significant medical evidence as to his worsening condition, or that any
25 worsening had or would last for a year or more.  This court finds there was no legal error on the
26 ALJ's part in rejecting Dr. Herb's opinion, as it was considered in the ALJ's RFC analysis.

7

1 The ALJ also disregarded Dr. Schwartz's opinion because he believed Dr. Schwartz would
2 have incorporated Stark's drug use into her assessment had she been privy to such information. AR
3 at 24, 241-47. Reading her opinion, it is evident Dr. Schwartz did not know how often the records
4 showed Stark used methamphetamine. AR at 237-38, 267. As such, the ALJ was justified in his
5 reasoning that Dr. Schwartz's assessment was incomplete, and giving little weight to her opinion
6 was proper. The ALJ is also entitled to draw reasonable inferences against a claimant based on the
7 evidence in the record. Thomas v. Barnhard, 278 F.3d 947, 959-60 (9th Cir. 2002).

### B. Stark's Subjective Claims of Disability

Stark contests the ALJ's determination that his testimony regarding subjective complaints was not credible, and argues that the ALJ's credibility finding is inadequate and unsupported by substantial evidence in the record. If a claimant produces evidence that he suffers from an impairment that could reasonably be expected to cause pain or other symptoms, and "there is no affirmative evidence suggesting . . . malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." Stolen v. Chater, 80 F.3d 1273, 1283-84 (9th Cir. 1996). However, an ALJ's finding that a claimant lacks credibility is generally entitled to deference. Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

Regarding Stark's credibility, the ALJ stated:

> The record also indicates significant substance abuse, including use of methamphetamine. The claimant has made inconsistent statements relative to his drug abuse and he has continually attempted to minimize it. . . . In January 2005, when placed on a 5150 involuntary hold, the claimant was agitated and could not sit still. He was speaking fast and wringing his hands. He admitted using "meth" but stated that he had not used any "on that day," a dubious claim at best. He again denied drug use in April 2005 but treated sources noted "suspicion of stimulant use." When examined by Dr. Kollath in May 2005, he denied any history of drug or alcohol abuse whatsoever, a clear falsehood. In September 2005, the claimant appeared to well summarize his actions, noting that he had "been doing all those things you don't want me to do." However, he related that he was only doing "a little meth." When examined by Dr. Schwartz in April 2006, the claimant noted that he had "experimented" with marijuana and amphetamines but then denied any history of substance abuse, again an outright fabrication. I note that even Dr. Schwartz stated that testing indicated increasing attempts to exaggerate his level of disturbance. . . . In sum, for all the reasons noted above, I find claimant not entirely credible with regard to his actual symptoms and limits.

8

AR at 25.  The court concludes that the ALJ's credibility finding is adequate and supported by substantial evidence in the record.  Accordingly, a remand for further consideration of Stark's credibility is not necessary.

### C. Report of Social Worker

Stark maintains that the ALJ did not specifically address the letter in the record written by his social worker, Matthew Day.  Commissioner stands by the ALJ's omission because he argues that any error was harmless.  The issue is not whether, if considered, the error would have been harmless, but rather whether the decision to omit the letter was supported by substantial evidence.  Accordingly, the fact that the ALJ does not give any reason, let alone cite to the record, for why the letter was not considered is a misapplication of the law.

### D. Stark's HIV status

Finally, Stark contends that the ALJ did not fully consider his HIV status as a medical impairment because he did not take into account the reports submitted by Drs. Clague and Herb.  As established above, Dr. Clague's report should have been taken into account, and as such, Stark's HIV status was not fully considered.

## II. Reliance on Medical-Vocational Guidelines

In finding that Stark had an RFC to perform a full range of medium work, the ALJ referred to the grids (20 C.F.R., Pt. 404, subpt. P, app. 2 section 203.29 prior to his attainment of age 50 and section 203.22 after the attainment of age 50),  which directed the determination that he was not disabled.  Stark argues that the ALJ's use of the grids was improper because he has non-exertional limitations which limit his range of work.

Here, there was no issue of Stark not being able to return to past relevant work, so the ALJ was to take into consideration Stark's RFC, age, education and work experience to ascertain if he can do any other work.  20 C.F.R. § 404.1520(f).  If the findings of fact about a person's vocational factors and RFC match the criteria of one of the rules in the grids, 20 C.F.R., Pt. 404, subpt. P, app. sections 200-204, the ALJ must use that rule to determine whether the claimant is disabled or not.  If a claimant has an impairment that limits his ability to work without directly affecting his strength, he

9

is said to have a non-exertional limitation not covered by the grids. If these non-exertional limitations are sufficiently severe to make use of the grids improper, the ALJ must rely on a vocational expert to determine a claimant's ability to perform certain work. Penny, 2 F.3d at 959.

The ALJ found that Stark suffered from severe mental impairments of bipolar I disorder and personality disorder not otherwise specified. As a result of these mental impairments, the ALJ found Stark had non-exertional limits in his functioning and is precluded from performing anything more than simple, repetitive tasks with only limited contact with the public and co-workers. Nevertheless, the ALJ did not take testimony from the vocational expert present at the hearing, and instead applied the grids to find Stark not disabled. The ALJ reasoned that application of the Medical-Vocational Guidelines (the grids) was not precluded because the limitation to unskilled work "automatically takes into account the claimant's allegation of difficulty relating to others." As such, he found that Stark would not be disabled under Social Security Ruling (SSR) 85-15, which provides that unskilled jobs ordinarily involve dealing mainly with objects as opposed to data or people.

The Ninth Circuit has held that where significant non-exertional limitations may make reliance on the grids inappropriate, the fact that a non-exertional limitation is alleged does not automatically preclude application of the grids. Desrosiers v. Sec'y. of Health and Human Svcs., 846 F.2d 573, 577 (9th Cir. 1988). Rather, the ALJ must first determine if the claimant's non-exertional, or mental and subjective pain, limitations significantly reduce the range of work permitted by his exertional, or physical, limitations. Id.

In showing this was, in fact, the case, Stark relies specifically on a more detailed reading of SSR 85-15, which states in pertinent part:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; *to respond appropriately to supervision, coworkers, and usual work situations;* and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base."

SSR 85-15 (emphasis added).

10

Here, the regulations expressly state that a substantial loss of ability to respond to supervision, co-workers and usual work situations severely limits the potential occupational base, even for unskilled work as the ALJ is proposing. The Commissioner contends that the ALJ properly relied on the grids because the non-exertional limitations did not significantly erode Stark's occupational base, but does not reference any supporting evidence to this effect. What the record reveals is that Stark has tremendous difficulty dealing with stressful situations, is short-tempered and easily irritable. AR at 188, 190. The ALJ found he should have only limited contact with the public and co-workers. AR at 23. While the ALJ opines that there still exist a significant amount of unskilled work in the national market "dealing primarily with objects, rather than with data or people," a realistic approach would reveal that all jobs require some level of interaction with co-workers and supervisors, and that the ALJ's speculation of a substantial occupational base is an impermissible stretch.

The Ninth Circuit has suggested that if a claimant's non-exertional limitations are sufficiently severe to make the use of the grids improper, then the ALJ must rely on a vocational expert to assess the claimant's ability to perform certain work. Penny, 2 F.3d at 959. Because the court finds that the ALJ's use of the grids was improper, the ALJ was under an obligation to hear the testimony of a vocational expert, and there is a need to remand on that basis.

III.    Remand for Further Proceedings

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000). In this case, remand is appropriate to properly consider Dr. Clague's medical evaluation and the social worker's letter as part of the RFC assessment. Remand, further, is necessary to take the testimony of a vocational expert in determining the type of work, if any, that Stark is capable of performing. Depending on the vocational expert's testimony, the ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

/////
/////

11

CONCLUSION

For the foregoing reasons, the court hereby DENIES Stark's motion for summary judgment and GRANTS Stark's alternative motion for remand. The court remands this proceeding to the ALJ for further administrative proceedings consistent with this opinion. Commissioner's motion for summary judgment is DENIED in part and GRANTED in part.

IT IS SO ORDERED.

Dated:   August 14, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California